The next case on our call, Agenda No. 7. No. 129795, People of the State of Illinois v. Victor Haynes. Counsel for the appellant. Good morning, Your Honors. Counselor. May it please the Court, Assistant Attorney General Garson Fisher for the people. Your Honors, Counsel was not ineffective for not seeking a Class I felony sentence for defendant under Section 84C1E because defendant wasn't entitled to such a sentence. There are a couple of reasons why this is so, but probably the most straightforward of them is that defendant was not acting under a sudden and intense passion resulting from serious provocation. And the reason that this is the more straightforward reason is because this Court has already determined exactly what those same words mean in the context of second degree murder. Now, the Court below departed from the usual rule of statutory construction that when the General Assembly uses the exact same words in a new context, it intends for those words to retain their well-settled meaning. But the parties now seem to agree that serious provocation means the same thing in the context of attempt murder as it does in the context of second degree murder. And accepting the well-settled meaning of the plain language of this statute and this Court's precedent applying those words in the second degree murder context, it is evident that the defendant cannot establish serious provocation here. He cannot establish substantial injury or assault because this Court has already held that a victim hitting a defendant that does not result in injury does not demonstrate substantial injury or assault. And that's exactly what we have here. There's never any evidence that Jerome was armed in any way. Precious testified that when the defendant was fleeing the bus, she saw no injuries on the defendant. And there was never any other evidence that the defendant was injured by Jerome. And, in fact, my friend concedes that there was no evidence that the defendant was injured by Jerome. Instead, he speculates that if counsel had raised this argument, he might have been able to produce some evidence of injury. But, of course, in the Strickland context, such speculation is not sufficient to sustain the argument or meet defendant's burden. And defendant cannot show serious provocation based on mutual combat, which was the theory that the Court below relied upon. And that's for two reasons. Again, this Court's precedent is instructive on this matter. First, Jerome did not willingly enter into combat with defendant. He was drawn into combat with defendant based on defendant's own acts. He was striking and choking Precious at the time when Jerome entered into combat with defendant. And, second, defendant's response to the alleged provocation was out of all proportion to that provocation. Defendant responded to what was at most a fistfight by pulling out a gun and shooting Jerome in the chest. And because that response was out of all proportion to the alleged provocation, defendant cannot demonstrate mutual combat to satisfy the serious provocation from either. And for that reason alone, he wasn't entitled to a Class I felony sentence under Section 84C1E. And counsel can't have been ineffective for failing to seek such a sentence. There's another reason that defendant was not entitled to that sentence, and that's because if the person he had endeavored to kill, Jerome, had died, it would have been the result of defendant's intentional act, shooting him in the chest, not as a result of accident or negligence. So for either one of these reasons, the defendant was not entitled to a Class I sentence under Section 84C1E. And we know that counsel is not ineffective for not bringing a meritless motion, and that is exactly the situation we have here. So counsel's defendant's ineffectual assistance of counsel claim necessarily fails. Your Honors have no questions. I have a question regarding the substantial injury or assault. You said that there's no evidence that the defendant suffered any serious injury, but assault doesn't require that. Is it enough if arguably White was so much bigger and there was some evidence or testimony that he was hitting the defendant several times in the face, that he was on top of him and he was much larger, that that would establish or give the jury the ability to make a factual determination about whether there was a serious assault? The answer to your question is no, Your Honor. And then if I can, I'd like to sort of also address a related but slightly tangential question. First off, the court's holding in AG was that a victim hitting a defendant that doesn't result in injury doesn't satisfy this exact type of serious provocation, the substantial injury or assault standard. And while that was a case that involved a substantial size difference between the victim and the defendant, the appellate court opinion that this court cited too favorably in reaching that holding did not in any way implicate the size difference between the defendant and the victim. And in fact, in that case, the victim had struck the defendant, knocked him to the ground. When the defendant was able to get back up, the victim struck him again. Nevertheless, when that didn't result in injury to the defendant and the defendant responded with a deadly weapon, the court held that it didn't satisfy the serious provocation problem. The other thing I would note is even if the facts, even if in a case where you had a much larger victim fighting with a smaller defendant and there was sort of an extensive unarmed fight going on, even if those facts could form the basis for, for example, to justify a jury instruction, say in the second-degree murder context or something like that, the question here is one of ineffective assistance of counsel. So the burden is flipped here. And the question is whether any reasonable attorney might have reached the same conclusion that counsel did here, that it wasn't worth seeking the sentence. And also on the prejudice problem, of course, whether the record that we have here demonstrates a substantial probability that he would have received a sentence as a Class I felony. And of course, we don't have really a record here that demonstrates that there was some sort of really substantial unarmed assault going on. I think the most, the sort of most intense description of what one witness called a tussle was that there were six to eight punches thrown before the defendant shot the victim in the chest. Now, the struggle with JALO continues for a couple more minutes, and there were some more gunshots after that. But all of that happens after he's already shot Jerome in the chest. Any other questions? Thank you very much, guys. Counselor Daphne? Your Honor, may I please the court? Sarah Curry from the State of Public Defender. I represent Victor Haynes. Subsection E of the attempt statute has befuddled courts for over 10 years, since its passage in 2010. And we are asking this court to make sense of the statute. Subsection E was designed to solve a problem. In People v. Lopez, this court held that the offense of second-degree murder does not exist in Illinois. However, this ruling created a sentencing anomaly whereby identical conduct could result in a greater sentence where the victim lived instead of where the victim died, because the sentencing range for second-degree murder is less than the sentencing range for attempt murder. The Illinois legislature responded by enacting Subsection E, a sentencing provision to mitigate attempt murder for a person acting under sudden and intense provocation. As Judge Tooman stated, Subsection E gave defendants found guilty of attempt murder, quote, the opportunity to provide mitigating factors consistent with the rationale of second-degree murder. However, what the clear commission wrote was anything but clear. There are two parts to the statute separated by an or and an and. And depending on what emphasis you give, the statute either creates alternative scenarios or conjoined elements. This ambiguity is highlighted by the appellate court decisions. In this case, the first district found that the statute required conjoined elements, requiring both a showing of provocation, and had the death occurred, it would have been caused negligently or accidentally. However, People v. Taylor, another division of the appellate court, found that the statute created alternative scenarios. First, where the defendant attempts to kill the one who provoked him. And second, the scenario of transferred intent, where the defendant specifically intended to kill his provoker, but instead takes a substantial step towards killing another, whose death, had it occurred, would have been negligent or accidental. Mr. Haines' position is the statute creates alternative scenarios. This interpretation is better because it promotes the purpose of the statute in aligning with secondary murder, and it allows for the utilization of a body of law that already exists. The state's position is so narrow and so untenable, it is inconsistent with the intent of the legislature, and it highlights the ambiguity in the statute. The state argues that the statute creates conjoined elements where the defendant must show both serious provocation and accident negligence. In its opening brief, the state cited to Taylor approvingly to argue that the statute covers cases involving transferred intent. However, in its reply brief, the state cited several cases from other jurisdictions for the proposition that transferred intent for attempt murder does not exist. However, Illinois law is clear that transferred intent does exist in attempt murder situations. And this interpretation completely writes out the or another language in the statute. And after abandoning transferred intent, the state is left with only one very specific and very narrow scenario where the statute would apply, where a defendant takes a preliminary step toward killing the victim and had the victim died, the death would have been accidental or negligent. As applies to attacks of this case, the state posits that Hat Haines boarded the bus and taken specific intent towards killing Jerome by drawing his gun, after which he dropped the gun and the gun accidentally fired, the defendant would have caused Jerome's death accidentally or negligently. However, this statute was not designed to only encompass the clumsy defendant. It is absurd. Not only does this example ignore the serious provocation requirement, the likelihood that the defendant would even be charged with attempt murder under this situation is so minimal. Thus, the state's reading of the statute is much too narrow, creating a nullity. Similarly, in its opening brief, the state criticized the appellate court for rewriting the statute by writing out the requirement that had the individual defendant endeavored to kill died, the defendant would have negligently or accidentally caused the death to a requirement that, quote, although the defendant intended to kill the victim, his acts were sufficiently at the minimum such that had the victim died, the death could have been considered negligent or accidentally caused. However, in its reply brief, the state cites this portion of the appellate court's decision approvingly, thereby asking this court to rewrite the statute the way it had complained that the first district did. Finally, the state wants it both ways. The state wants states to judge Tuman's stated purpose for providing mitigating factors consistent with the rationale for second-degree murder when interpreting the serious provocation language of the statute, but the state abandons Judge Tuman when asking this court to interpret the accident-negligent language completely differently than it has been interpreted in second-degree murder context. In applying the alternative scenario interpretation of subsection E to the facts of this case, Haynes is simply asking for a new sentencing hearing where he can show by a preponderance of the evidence that he was acting under sudden and intense provocation resulting from serious provocation. This court has not interpreted this language in the statute, but it has interpreted a similar language in the context of second-degree murder. Under the facts of this case, defense counsel was ineffective for failing to argue that serious provocation based on substantial physical injury or assault as well as mutual combat. Haynes suffered a substantial physical injury or assault where Jerome, a 300-pound man, charged at him from the front of the bus, punched him in the face with his fist, and then continued to punch him six or seven more times as he was on top of him in the back of the bus. Certainly this is considered a substantial physical injury, and there are not cases holding that. Counsel, does it matter that no one else on the bus was armed? It does not matter that no one on the bus was armed. Is the defendant's response in any way disproportionate? Well, to the situation that he was faced? The issue of proportionality is not one that is defined by the statute. That has come out of Illinois case law, and the issue of proportionality has come out of cases that talk about a slight provocation. But the statute requires serious provocation, and in this case there was serious provocation where you have a 300-pound man pummeling Mr. Haynes as he's on top of him in the back of the bus. Proportionality or not, his response under those circumstances was not out of proportion, where he certainly was under the impression that this might go on and this 300-pound man could continue to punch him until his life was extinguished. Alternatively, Haynes and Jerome were involved in mutual combat. Mutual combat is a fight or struggle that both parties enter willingly, or where two persons upon sudden quarrel and in hot blood mutually fight on equal terms. Here, Jerome entered the fight willingly, where he charged from the back of the bus and punched Haynes in the face. Jerome and Haynes then fell into the seats in the back of the bus, tussling with one another, while Jerome continued to swing at Haynes seven or eight more times. Counsel performed efficiently by failing to request things and pursuant to subsection E, where there was no possible strategic advantage. Counsel, what about your opponent's comment that Mr. White was drawn into the situation by what the defendant was doing to his niece, who's a woman and not armed? Well, in that context, we need to look at the facts as they were. We had a large group of very drunk people in a small, confined space. A verbal altercation broke out between Haynes and another man. Precious approached them, and Precious told police she shoved Haynes two to three times, pushing him backwards. She denied making that statement at trial, but the officer's stipulation was entered that she actually started the physical altercation between her and Haynes. Haynes responded by swinging at Precious and strangling her. Wasn't there some testimony, though, that she was trying to break up the fight, not that she started it? Well, she was trying to stop the argument. To separate Haynes and the other combatant. Correct. But her statement to police was that in trying to do that, she started a physical situation by pushing Haynes two to three times, and he stumbled backwards. That's when Haynes attacked her. But regardless, Jerome was in the front of the bus, somewhat unaware of what was happening, and he came back and just swung right away at Haynes. He could have tried to diffuse the situation in a much more calm manner. Instead, by his own testimony, he charged from the front of the bus to the back of the bus, moved Precious out of the way, and punched Jerome right in the face. And then as the two fell backwards and he was on top of him, he continued to punch him six to seven more times. There was no strategic advantage that might have been gained by not asking for sentencing pursuant to the statute. Haynes had nothing to lose and everything to gain. There was no downside. Prior to Haynes' sentencing hearing, a series of First District cases had discussed the applicability of subsection E to cases such as Haynes. Moreover, counsel brought up issues of provocation and accident at trial, making his failure to request sentencing under subsection E patently unreasonable. It is clear he didn't know about the statute. Had counsel argued the applicability of subsection E, there's a reasonable probability that the trial court would have found a mitigating factor proven by a preponderance of the evidence. And as such, we cannot have confidence in the outcome. Again, Haynes is only asking for a remand for a new sentencing hearing where he can try to establish a serious provocation by a preponderance of the evidence. If there are no other questions, Mr. Haynes respectfully requests that you affirm the appellate court's ruling. Thank you very much. Counsel, can you address the suggestion that your reading of subsection E is so narrow that it wouldn't apply to other situations? Of course, Your Honor. There are a couple of responses to that. First off, of course, this Court's interpretation of the statute starts with the plain language. And it is necessary to note that while the serious provocation prong retains identical language to secondary murder, that the language about accident and negligence is materially different. And in fact, the Clerk Commission considered several options that would have implicated the either put the attempt language into the secondary murder statute or implicated identical language. They didn't go that route. They chose different language. And the language they chose includes the word and, which does not appear in the second-degree murder statute at all. And they also asked whether if the person that the defendant endeavored to kill had died would have been caused by accident or negligence. And there's no question that the person that the defendant endeavored to kill here was Jerome. So the question has to be whether if Jerome had died would have been the result of accident or negligence. So to my friend's point, yes, we are asking that this Court look to sort of the big picture doctrinal purposes behind the creation of subsection E and hold that the identical language about serious provocation means the same thing here as it does in second-degree murder. But it has to abide by the plain language of the statute that the General Assembly passed in interpreting that second prong. And the distinction is actually one that makes sense. It is not unreasonable that the General Assembly might have determined that a defendant who took a substantial step with the specific intent of killing someone, but not a step that if the defendant had died, defendant's actions would have been the intentional cause of that death, to be less criminally liable than a defendant who was thwarted merely by their own bad aim or the resilience of their victim. So it is a natural line for the General Assembly to have drawn. Moreover, if the language the General Assembly passed, if the language of the statute doesn't fully address the sentencing inequity that the clear commission was targeting, that might be something that the General Assembly needs to take a look at taking additional steps to remedy. But this Court can't simply rewrite a statute to further address a problem, even if it were the case, and I don't think it is, but even if it were the case that it were impossible to find an alignment between specific intent and the factors in subsection E as drafted, that might mean that this statute couldn't be applied, but it still wouldn't empower this Court to write a statute that the General Assembly hasn't written and hasn't passed. So I guess my answer, in short, is a couple of things. First off, I think it is a reasonable distinction that the General Assembly drew here, not some absurdity. Second off, it is clearly, from the plain language, what the General Assembly said here. And third off, this Court can't rewrite that statute to better address the alleged inequity in sentencing than the General Assembly has done. I would also note that this Court doesn't actually have to reach this question of and, meaning and in the context of the accident or negligence prom of subsection E, because defendant can't demonstrate serious provocation here, and that alone is reason enough why he was not entitled to a Class I felony sentence in this case. And as my friend eventually acknowledged, they're not merely asking this Court to remand for resentencing, to give the defendant a chance to try and meet his burden under subsection E. They're asking this Court to find that counsel was ineffective for not having done that in the first place, because that's the posture that we are in here. And this no reason not to sort of standard that defendant seems to be implying would turn Strickland on its head. The question is not would another attorney have maybe taken a shot at this if they didn't see a downside. The question is whether no reasonable attorney would have chosen not to seek a Class I sentence in this case. And given all of the reasons that we presented why a defendant was not entitled as a matter of law to a Class I sentence here, certainly it was not unreasonable, objectively unreasonable for counsel not to do so here. And it also would ignore the prejudice prom of Strickland to simply say, well, if we don't see a downside, then that means counsel was ineffective for not going down this route. In terms of death, accident, or negligent, standard and the implication that court might have found that it was an accidental or negligent shooting if defendant had sought a reduced sentence, it's worth noting that the trial court found it was an intentional act based on the location of the gunshot wound. So there's not a reasonable probability that the court would have suddenly reversed its course without any reason provided from that initial factual determination. And in terms of the willingness of Jerome to enter into this conflict and the fact that he came from a different part of the bus, as we pointed out in our briefs, this court's holding in Austin is very instructive here. And I would note that the victim in Austin also was on the bus and followed the defendant off of the bus to engage in the alleged combat in that case. And this court still held that because of defendant's conduct prior to the bus driver leaving the bus, the bus driver's involvement in that combat was not willingly entered. So for all of these reasons, defendant wasn't entitled to a sentence under subsection E. Counsel wasn't ineffective for not seeking one. And this court should reverse the judgment of the appellate court. Does this court have any further questions? Thank you. Thank you very much. This case, Agenda Number 7, Number 129795, People of the State of Illinois v. Victor Haynes, will be taken under advisement. Thank you very much, Counsel, for your-